**COLUMBIA BROADCASTING SYSTEM, INC., Plaintiff,**

v.

**AMERICAN RECORDING AND BROAD- CASTING ASSOCIATION and Radio & Television Broadcast Engineers Union, Local 1212, International Brotherhood of Electrical Workers, Defendants.**

**No. 68 Civ. 3794.**

United States District Court
S. D. New York.

Dec. 3, 1968.

McGoldrick, Dannett, Horowitz & Golub, New York City, for plaintiff, Emanuel Dannett and Jacob Silverman, New York City, of counsel.

Silagi & Craner, New York City, for American Recording and Broadcasting Ass'n, Robert Silagi, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

This is an action in which Columbia Broadcasting System, Inc. (CBS) seeks to compel joint arbitration of a work assignment dispute between two unions. American Recording And Broadcasting Association (Association), which represents recording engineers, claims that certain work should be assigned to it under its contract with CBS and has demanded arbitration. CBS, knowing that the work which the Association claims has already been assigned under another collective bargaining agreement to Radio & Television Broadcast Engineers Union, Local 1212, International Brotherhood of Electrical Workers (Local 1212), which represents broadcast technicians, has demanded arbitration with that Local and consolidation of both arbitrations. Local 1212 has been joined as a party defendant in this action. The Association objects to consolidation and moves to dismiss the complaint for failure to state a claim under § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, and for lack of jurisdiction.

A short recitation of the labor relations history of the three parties will make the dispute more understandable. In December 1965, Local 1212, representing both the recording engineers, numbering approximately 100, and the broadcast technicians, numbering approximately 700, entered into a three-year contract with CBS. The contract had a broad arbitration provision for all disputes arising under the contract. Commencing in 1966, the recording engineers became disenchanted with the efforts of Local 1212 on their behalf. The dispute between the recording engineers and Local 1212 eventually culminated in the severance of the recording engineers from the Local. Thereafter, the Association was certified by the National Labor Relations Board (NLRB) as the exclusive bargaining representative for the recording engineers on February 14, 1967 and entered into a collective bargaining agreement with CBS on June 7, 1967. This contract also had a broad arbitration provision. Since then, the Association, Local 1212 and CBS have engaged in a running battle with one another because both contracts contain expansively written work assignment provisions.

■■ The Association's contentions that CBS fails to state a claim and lack of jurisdiction must be rejected. The dispute involves two labor contracts and grievances admittedly arising under them. Federal courts have jurisdiction under § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, to enforce specifically promises to arbitrate grievances arising under a collective bargaining agreement. Textile

Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

The Association's contention of lack of jurisdiction to compel joint arbitration is premised on the fact that Local 1212 is a stranger to the Association's contract with CBS. The thesis is that separate contracts breed separate grievances and must be submitted to separate arbitrators. The argument might have validity if the Association's contract with CBS were viewed in light of common law contract principles. Recent developments in the law of collective bargaining, however, make clear that a collective bargaining contract is not necessarily governed by common law principles. The contract is really "a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. * * * The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry * * *." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578–579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960).

The scope of this principle has been broadened continually as the courts and NLRB assist the various parties to collective bargaining agreements achieve industrial peace. The right of intervention, for example, is now freely granted as of right before circuit courts in appeals from NLRB decisions involving contract disputes. International Union United Automobile, Aerospace & Agricultural Implement Workers of America, AFL–CIO, Local 283 v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965). Similarly, an employer has been forced to arbitrate with a union even though it never entered into a contract with the union. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). In like vein, the NLRB recently allowed several

unions to sit at the bargaining table and compelled an employer to bargain with all of them although only one of them was a potential party to the contract. General Electric Company and International Union of Electrical, Radio and Machine Workers, AFL–CIO, 173 N.L.R.B. No. 46, Oct. 25, 1968. We think these authorities make clear that a contract with a particular union cannot be viewed in isolation but must be applied in the context of the employer's relationships with his entire working force.

Rational, meaningful and peaceful resolution of work assignment disputes, therefore, demand the appearance before the same tribunal of all of the parties to the dispute, not just the parties to the contract. These considerations undoubtedly underlie the requirement that work assignment disputes under the related Railway Labor Act, 45 U.S.C. § 151 et seq., growing out of a railroad's bargaining agreements with several unions must be submitted to a single panel of arbitrators for resolution, even though one union does not consent to multilateral arbitration. Transportation-Communication Employees Union v. Union Pacific R.R., 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966).*

Similarly, if the NLRB were to resolve this dispute, the Association, Local 1212 and CBS would all have to appear before the Board. Labor-Management Relations Act of 1947, §§ 8(b) (4) (D), 9 and 10(k), 29 U.S.C. §§ 158(b) (4) (D), 159 and 160(k); National Labor Relations Bd. v. St. Louis Printing Pressmen & A. U. No. 6, Inc., 385 F.2d 956 (8th Cir. 1967). Likewise, if this court were to resolve the dispute on its merits, all three parties would be present since there are common questions of law and fact. Rule 42(a), Fed.R.Civ.P.

The Association has not demonstrated any prejudice which would result from consolidating the arbitrations. There is none, because Local 1212 is willing to submit the dispute to an arbitrator of

---

* Precisely the same argument was made by the union in that case as the Association makes in this case. The Supreme Court rejected the argument.

the Association's choosing. The Association cites no case or statute which forbids consolidation of the arbitration, and nothing in its contract with CBS excludes multilateral arbitration of disputes arising under the contract.

■ Compelling all three parties to the dispute to submit their grievances to the same arbitration is practicable, economical and convenient for the parties and the arbitrator. It is sound because it not only avoids duplication of effort but the possibility of conflicting awards. Considering all the circumstances, we think consolidation of the arbitrations is the appropriate remedy. Cf. General Teamsters, Chauffeurs & Helpers Union Local No. 782 v. Blue Cab Co., 353 F.2d 687 (7th Cir. 1965).

Accordingly, plaintiff's motion to consolidate its arbitrations with the Association and Local 1212 is granted, and the Association's motion to dismiss for failure to state a claim and for want of jurisdiction is denied.

So ordered.