WINDOW GLASS CUTTERS LEAGUE OF AMERICA AFL/CIO, Plaintiff,

v.

AMERICAN ST. GOBAIN CORPORATION, a corporation, Defendant.

Civ. A. No. 69–420.

United States District Court
W. D. Pennsylvania.

Aug. 7, 1969.

Leonard Sigall, Columbus, Ohio, Morrison F. Lewis, Jr., Greensburg, Pa., for plaintiff.

William D. Armour, Leonard L. Scheinholtz, Jonathan L. Alder, of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

OPINION

WEBER, District Judge.

This is an action by a labor organization against an employer to enforce provisions of their collective bargaining agreement under Sec. 301 of the Labor Management Relations Act of 1947 [29 U.S.C. § 185]. Defendant maintains a glass manufacturing plant covered by this agreement in which plaintiff is recognized as the exclusive bargaining agent for the "glass cutters" who work in the "cold end" of the plant cutting the glass to specific sizes. The other end of the plant is called the "hot end" where the molten glass is drawn from a melting tank into a drawing machine and fabricated into sheets for delivery to the "cold end" for cutting. At the drawing machine were formerly two cutting wheels which trimmed the edges of the sheets being drawn.

In February 1969 defendant added a third cutting wheel to the drawing machine in the "hot end".

All the employees of the "hot end" of the plant are members of the "United Glass and Ceramic Workers of North America, AFL–CIO, Local No. 21" which also has a collective bargaining agreement with defendant. For identity we will call these employees "ceramic workers".

On February 27, 1967, plaintiff filed with defendant on a printed form a "Grievance Report" allegedly under the provisions of Article XX "Grievance Procedure" of their collective bargaining agreement, asserting that the defendant company was in violation of the agreement by assigning to employees outside its bargaining unit the work of setting and adjusting cutting heads on cutting machines. The defendant did not accept or answer this Grievance Report in accordance with the first stage of the grievance procedure, but returned it with a note informing plaintiff's agent that it "would not receive or process a grievance concerning the drawing machines as no cutters have been or are employed in that area of our operation, and it is, therefore, construed to be outside your jurisdiction."

This suit seeks an order to enforce the grievance procedure and compel defendant to receive and process the grievance in accordance with the procedures set forth in Article XX of the Agreement, including submission of said grievance to binding arbitration if not otherwise settled.

Defendant's responsive pleadings were a Motion to Join Additional Defendants under Fed.R. of Civ.P. 19 and 21, and a Motion to Interplead Additional Defendants under Fed.R. of Civ.P. 22. Both of these motions seek to compel the joinder of the United Glass and Ceramic Workers as additional parties defendant.

We view this matter as an incipient jurisdictional dispute between the two unions. It has only reached the first step in the grievance procedure under plaintiff's agreement but the possibility of development of a full-fledged jurisdictional dispute is already apparent. Recent judicial history illustrates the pattern. Transportation-Communications Employees Union v. Union Pacific Railroad Co., 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 [1966]; N.L.R.B. v. Radio and Television Broadcast Engineers, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 [1961].

The possibility which the defendant foresees and wishes to avert here is passing through the grievance procedure to the finality of binding arbitration solely between itself and plaintiff union and then, as a result of such arbitration, facing a new grievance from the "Ceramic Workers" also leading to binding arbitration with an inconsistent result. That such a dilemma is real was demonstrated in this court in American Sterilizer Company v. Local Union No. 832, I.U.U.A., A.A. Workers et al., D.C., 278 F.Supp. 637, where two separate arbitration procedures under separate union contracts resulted in opposite interpretations of identical language in the two contracts.

Plaintiff argues that defendant is premature, that all it now seeks is reception of the grievance in the first stage of the grievance procedure. It argues that most grievances are settled prior to the arbitration stage and thus there is no justification for involving a stranger to the present contract at this time. Plaintiff further argues that defendant company can present its demand for tri-partite arbitration to the arbitrators if and when the present grievance reaches the arbitration stage.

Tri-party arbitration demands have been considered by labor arbitrators in incipient jurisdictional disputes. They lead to differing conclusions. If the present defendant were now faced with a complaint to compel arbitration, a question would be presented as to whether a court should decide an issue of bilateral or tri-partite arbitration, and a further question arises as to the decision of an arbitrator before whom

such an issue is placed. Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 [1964], indicates that the Court felt that bilateral arbitration was required in any event, even though the spectre of a jurisdictional dispute remained, which might require further recourse to the National Labor Relations Board, either as a representational issue, or possibly through an unfair labor practice proceeding. The concurring opinion of Harlan, J., in *Carey*, supra, p. 273, 84 S.Ct. p. 409, indicates that compelling bilateral arbitration was not a full solution:

"* * * Lacking a clear-cut command in the statute itself, the choice in substance lies between a course which would altogether preclude any attempt at resolving disputes of this kind by arbitration, and one which at worst will expose those concerned to the hazard of duplicative proceedings. The undesirable consequences of the first alternative are inevitable, those of the second conjectural. As between the two, I think the Court at this early stage of experience in this area rightly chooses the latter."

We believe that two lines of recent development indicate the proper treatment. One is recent recognition by the courts of the distinctive nature of the collective bargaining agreement, as contrasted with the ordinary contract for goods and services, covering the whole employment relationship, and creating the common law of a particular industry or plant. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578–579, 80 S.Ct. 1347, 4 L.Ed.2d 1409. This new light on the contract relationship caused the Court to reject the demand of one union for bilateral consideration of work assignment disputes and to require the Railroad Adjustment Board to determine the entire dispute with respect to the conflicting claims of two unions under their respective contracts to have jobs assigned to their members. Transportation-Communications Employees Union

v. Union Pacific Railroad Co., 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 [1966]. Similarly, in the general labor relations area the Court at an earlier date refused enforcement of an N.L.R.B. order involving a dispute arising from work assignment because the Board had not made an affirmative award of the work between the employees of competing unions. N.L.R.B. v. Radio and Television Broadcast Engineers, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 [1961].

Facing a demand for arbitration from one union on a work assignment issue, and knowing that the work claimed had already been assigned to another union, Columbia Broadcasting System filed its complaint naming both unions defendant, praying that the demand of the one union for arbitration be consolidated with its demand for arbitration against the rival union. The district court denied the motion to dismiss, held that a claim was presented under Sec. 301 of the L.M.R.A. [29 U.S.C. § 185] and ordered the consolidation of arbitration:

"Compelling all three parties to the dispute to submit their grievances to the same arbitration is practicable, economical and convenient for the parties and the arbitrator. It is sound because it not only avoids duplication of effort but the possibility of conflicting awards. Considering all the circumstances, we think consolidation of the arbitrations is the appropriate remedy." Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Assoc., 293 F.Supp. 1400, 1403 [S.D.N.Y.1968].

Unfortunately, the parties at this stage of the dispute do not have access to an administrative tribunal such as the Railroad Adjustment Board or the National Labor Relations Board with clear power to determine the whole dispute. There is no present unfair labor charge or representational issue.

The defendant argues, and with merit, that to commit itself to the grievance procedure at its first step without the

assurance of tri-partite consideration of the issues may well bind it irrevocably to an escalator from which there is no point of departure until a destination is reached which places it face to face in a dispute with another union.

 The second line of development in legal affairs that supports defendant's claim is procedural. The 1966 Amendments to Federal Rules of Civil Procedure 19 provide a more liberal approach to the joinder of parties to secure a just adjudication or more complete relief. The text of the Rule almost demonstrates its applicability to the circumstances of this case where it states the condition that the disposition of the case, without the joinder of such a party, any of the persons already parties may be left subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations [Fed.R. of Civ.P. 19(a) (2) (ii)]. To illuminate the obvious, 3A Moore's Federal Practice ¶ 19.01[5,–3] states:

"Clause (2) (ii) recognized the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability."

A possibility of such liability is all that is required. The possibility is readily apparent when one reviews the history of work assignment disputes in the legal literature.

While we have considered Defendant's Motion for Joinder under Fed.R. of Civ. P. 19 under an assumption that the relief prayed for in Plaintiff's Complaint will be granted, and that consideration of Plaintiff's grievance will be ordered, we do not so rule at this time. The matter has been briefed and argued by the parties under the assumption that plaintiff is entitled to such relief, but defendant has not filed its Answer and we are unable to dispose of that matter at this time. We will sign the Order submitted with Defendant's Motion to Join Additional Defendants under Fed.

R. of Civ.P. 19. We find that such joinder will not deprive this Court of jurisdiction or venue of the action.

### ORDER

And now this 7th day of August, 1969, it is ordered that:

Defendant's Motion to Join Additional Defendants under Fed.R. of Civ.P. 19 is granted;

 Defendant's Motion to Interplead Additional Defendants under Fed. R. of Civ.P. 22 is denied, without prejudice, as moot, in view of the joinder herein ordered under Fed.R. of Civ.P. 19.