**DISTRICT 2 MARINE ENGINEERS BENEFICIAL ASSOCIATION—ASSOCIATED MARITIME OFFICERS, AFL–CIO, Plaintiff,**

**v.**

**PUERTO RICO MARINE MANAGEMENT, INC., Defendant.**

**No. 81 Civ. 5321(MEL).**

United States District Court, S. D. New York.

April 21, 1982.

O'Donnell & Schwartz, New York City, for plaintiff; Joel C. Glanstein, New York City, of counsel.

Zelby & Burstein, New York City, and Rafael Cuevas Kuinlam, Hato Rey, P. R., for defendant; Herbert Burstein, New York City, of counsel.

LASKER, District Judge.

Puerto Rico Marine Management, Inc. ("PRMMI") operates a fleet of shipping vessels. Members of District 2, Marine Engineers Beneficial Association—Associated Maritime Officers, AFL–CIO ("District 2") were employed on two of PRMMI's vessels under a collective bargaining agreement between District 2 and PRMMI until their termination on August 20, 1981. PRMMI's other vessels were manned by members of District 1, Pacific Coast District, Marine Engineers Beneficial Association ("District 1").

PRMMI's collective bargaining agreements with District 1 and 2 were, by their terms, scheduled to expire on June 15, 1981. However, PRMMI and District 1 entered into an agreement, effective June 16, 1981, which, in contrast to prior agreements between District 1 and PRMMI, did not exclude from its coverage any vessels operating under outstanding collective bargaining agreements with other maritime unions. About the same time and prior to the June 15th expiration date, District 2 and PRMMI agreed to extend their collective bargaining agreement. On June 11th, District 2 sent PRMMI a telex which provided:

"This is to advise that the contract between your Company as owners and/or operators of this union is extended beyond the expiration date of June 15, 1981. This extension can be cancelled by the union by giving 24 hours written notice. Please confirm your agreement" (Affidavit of Jerome E. Joseph, ¶ 8; Exhibit X annexed to the Verified Complaint).

On June 12, 1981, PRMMI responded as follows:

"This is to confirm our agreement with your telex of June 11, 1981, extending our present contract between your union and this Company beyond the expiration date of June 15, 1981." (Affidavit of Jerome E. Joseph, ¶ 9; Exhibit 4).

In July, 1981, District 2 proposed amendments to the collective bargaining agreement. On August 18, 1981, PRMMI rejected the proposals and purported to terminate the collective bargaining agreement:

"Puerto Rico Marine Management, Inc., (PRMMI) does not agree with such proposals. Therefore, PRMMI gives notice of not renewing the Collective Bargaining Agreement and hereby terminates all collective bargaining agreements, together with all supplementary memorandum or agreements between the parties, if any, with MEBA-District 2." (Joseph Affidavit, ¶ 11, Exhibit Z annexed to the Verified Complaint.)

On August 20, 1981, PRMMI discharged the licensed marine engineers represented by

District 2. District 2 immediately demanded arbitration of the discharges, contending that they were without cause. When District 1 learned of the dispute, it also demanded arbitration under its contract with PRMMI. The arbitration between District 1 and PRMMI was held on August 20th, and on August 21st the arbitrator rendered an award finding all of PRMMI's vessels to be covered by the agreement between District 1 and PRMMI.

On August 21, 1981, PRMMI filed suit to enjoin the arbitration between PRMMI and District 2, contending that there was no agreement in effect between it and District 2 at the time of the discharges which required arbitration. That action was dismissed for lack of subject matter jurisdiction. District 2 then filed this suit, seeking an order compelling arbitration of its grievances and the appointment of an arbitrator. The previous arbitrator resigned effective June 15, 1981. Both sides move for summary judgment. In addition, PRMMI moves pursuant to Fed.R.Civ.Pr. 12 to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## I.

The central issue presented by the pending motions is whether PRMMI's purported termination of the collective bargaining agreement between it and District 2 on August 18th was effective and thereby relieved it of the duty under the agreement to arbitrate grievances. PRMMI contends that it is under no duty to arbitrate (and this court has no subject matter jurisdiction) because at the time it discharged the District 2 members, it had already cancelled the agreement. According to PRMMI, since the extension of the prior contract was indefinite as to time, it was terminable at will by either party. Since it had cancelled the agreement before the discharges, it argues there is no contract which requires it to arbitrate the discharges.

District 2, on the other hand, contends that the extension of the agreement by its terms conferred upon District 2 alone the right to terminate the extension. Since District 2 never gave the twenty-four hour notice to terminate referred to in the telexes, it contends that the agreement is still in effect. Alternatively, District 2 argues that at the least the extension must be construed to provide for continuation of the collective bargaining agreement for a reasonable period of time during which good faith negotiations would take place for a new contract and to provide that termination could only take place after reasonable notice. Under this construction, District 2 maintains that the purported termination by PRMMI must be found to have been ineffective because no actual negotiations had taken place and because no reasonable notice of intent to terminate was given by PRMMI.

District 2's contention that PRMMI was bound in perpetuity by the extension agreement while it was free to terminate on twenty-four hours notice is unpersuasive. While the telexes themselves make no mention of PRMMI's right to terminate the extension agreement, it does not follow in the context of this case that PRMMI was to be perpetually bound. In light of the fact that the extension was of a collective bargaining agreement and the parties anticipated negotiations towards a new agreement, it is unreasonable to infer from the lack of provision for termination by the employer that the employer thereby agreed to be forever bound by the prior contract. Such a reading of the telexes would entail a finding that PRMMI agreed to be bound by the prior contract no matter how the negotiations between the parties proceeded, leaving PRMMI in a vulnerable bargaining position, to say the least. The relatively informal telexes exchanged between PRMMI and District 2 do not support such a reading when considered in the context of the relationship between the parties.

By the same token, PRMMI's contention that it was free to terminate the extension at will is also unpersuasive. The context in which the parties agreed to the extension suggests that its purpose was to provide time during which each side was protected by the existing contract and during which

negotiations toward a new contract would take place. The right of the employer to terminate the agreement at will during the interim before a new contract is reached is inconsistent with the purpose of the extension to provide a protected period for good faith negotiations. Accordingly, PRMMI's construction of the extension agreement is also precluded by the context of the relationship between the parties.

■ In these circumstances, where no specific provision has been made for the duration of an agreement, the duration must be judicially terminated by implying the intention of the parties from the nature of the contract and the circumstances surrounding its execution. *See Consolidated Theatres, Inc. v. Local 16, Theatrical Stage Employees*, 69 Cal.2d 713, 73 Cal.Rptr. 213, 447 P.2d 325 (1969). As already noted, the purpose of the extension agreement here was to allow the parties to negotiate toward a new agreement while enjoying the protections of the prior agreement. Such a purpose suggests that the extension was intended for a reasonable time during which negotiations would take place. It also suggests that the good faith negotiations would occur, with a view toward reaching agreement on another contract, and that termination would not occur without reasonable notice by the terminating party. The determination whether these conditions were met depends on the circumstances and practices of these particular parties and this particular industry. Accordingly, a factual hearing is necessary to determine whether PRMMI's purported termination was effective.

■ While the arbitrability of District 2's claim that its members were discharged without cause depends upon a determination whether the collective bargaining agreement was in effect at the time of the discharges, any claim to benefits arguably accruing during the undisputed existence of the agreement and the extension (that is, until August 18, 1981) are presently arbitrable, regardless of whether there is now an effective collective bargaining agreement between the parties. *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). Accordingly, District 2's claims for severance pay and contributions due to be paid to various benefit plans and committees by PRMMI may be immediately arbitrated. PRMMI has indicated, however, that it "will not deny liability for benefits which accrued during the life of the agreement with plaintiff . . ." (Defendant's Reply Memorandum, p. 13). The parties should attempt to reach agreement on these issues at the present time. If they are unable to reach agreement, the court upon application of either party will order arbitration and appoint an arbitrator to determine the claims.

## II.

■ PRMMI's remaining grounds for dismissal are without merit. The contention that the court has no subject matter jurisdiction under § 301 of the Labor Management Relations Act because District 2, representing supervisors, is not a "labor organization" under the Act, is foreclosed by the decision of the Court of Appeals in *United States v. National Marine Engineers Beneficial Association*, 294 F.2d 385 (2d Cir. 1961). *See Globe Seaways, Inc. v. National Marine Engineers Beneficial Association*, 451 F.2d 1159, 1160 n. 1 (2d Cir. 1971). The proposition that arbitration of the discharges cannot be ordered here because PRMMI has already arbitrated the coverage of its agreement with District 1 under that agreement is precluded by the decision of the Court of Appeals in *Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Association*, 414 F.2d 1326 (2d Cir. 1969) that the employer's remedy, when faced with the prospect of inconsistent bilateral arbitration awards in the context of a jurisdictional dispute, is to seek tripartite arbitration. Having failed to pursue such a remedy, PRMMI must now accept the risk, apparently caused by its own decision to enter into contracts with both District 1 and District 2 for the same work, of inconsistent bilateral arbitration decisions. It is this court's duty under § 301 of the Act to enforce the obligations of any contract found to exist between District 2 and PRMMI. *See Louisiana-Pacific Corp. v. International Brotherhood of Electrical Work-*

*ers, AFL–CIO, Local Union 2294,* 600 F.2d 219 (9th Cir. 1979).

\* \* \*

The motions for summary judgment are denied. PRMMI's motion to dismiss the complaint for failure to state a claim and lack of subject matter is denied. A factual hearing will be scheduled in the near future to determine the issues described above.

It is so ordered.